UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| PHILLIP JUNIOR HARRIS,<br># A 039 134 214,<br><br>　　　　　Petitioner,<br><br>v.<br><br>ENRIQUE LUCERO, *et al.*,<br><br>　　　　　Respondents. | )<br>)<br>)<br>)　Civil Action No. 1:11-cv-692<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **MEMORANDUM OPINION**

Petitioner Phillip Junior Harris ("Harris") has filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the "Petition") (Doc. No. 1). As his grounds for relief, Harris contends that immigration officials have denied him the individualized bond release hearing he is entitled to receive under 8 U.S.C. § 1226(a) following his arrest, and that he is being improperly held without such a hearing pursuant to the mandatory detention provisions of 8 U.S.C. § 1226(c).[1]

---

[1] Section 1226(a) states:

> Arrest, detention, and release. On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General--
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on--
> 　(A) bond of at least $ 1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> 　(B) conditional parole; but
> (3) may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

## I. **BACKGROUND**

Harris is a native and citizen of Jamaica who entered the United States in 1985 when he was nine months old, and became a lawful permanent resident in or around 2005 or 2006. Pet., ¶¶ 7, 14. On December 8, 2008, Harris was convicted in Virginia state court of breaking open a gas pump in violation of Va. Code § 18.2-151, for which he received a two-year suspended sentence, and grand larceny in violation of Va. Code § 18.2-95, for which he received a ten-year suspended sentence. Pet., ¶ 15. On June 10, 2010, Harris was charged with possession of a controlled substance with intent to distribute in violation of Va. Code § 18.2-248; Harris was released on bond and this

---

Section 1226(c) states:

> Detention of criminal aliens.
> (1) Custody. The Attorney General shall take into custody any alien who--
> (A) is inadmissible by reason of having committed any offense covered in [8 U.S.C. § 1182(a)(2)],
> (B) is deportable by reason of having committed any offense covered in [8 U.S.C. § 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D)],
> (C) is deportable under [8 U.S.C. § 1227(a)(2)(A)(i)] on the basis of an offense for which the alien has been [sentenced] to a term of imprisonment of at least 1 year, or
> (D) is inadmissible under [8 U.S.C. § 1182(a)(3)(B)] or deportable under [8 U.S.C. § 1227(a)(4)(B)],
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.
> (2) Release. The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of title 18, United States Code, that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

charge remains pending in Virginia state court. Pet., ¶ 16. On May 19, 2011, U.S. Immigration and Customs Enforcement ("ICE") agents arrested Harris in connection with deportation proceedings instituted against him based on his convictions[2] and he is currently detained in connection with those proceedings at the Hampton Roads Regional Jail in Portsmouth, Virginia. *Id.* at ¶¶ 2, 17 and 18. On July 11, 2011, an Immigration Judge denied Harris's request for a hearing on whether he should be released on bond and on what conditions on the grounds that Harris was subject to mandatory detention under 8 U.S.C. § 1226(c). Pet., ¶ 19.

## II. ANALYSIS

Harris contends that he is not subject to mandatory detention under section 1226(c), and that he is entitled to an individualized bond hearing. In at least five other cases in this District, the Court has considered whether an arrested alien convicted of a crime enumerated in 8 U.S.C. § 1226(c)(1)(A)-(D) is entitled to a bond hearing when he is arrested by immigration authorities, not at the time of his release from state or federal detention on an enumerated criminal offense, but at a point in time substantially thereafter. In those cases, the Court has ruled that the mandatory detention provisions of section 1226(c) do not apply in those circumstances. Rather, where an alien is not released directly into the custody of the United States upon his release from federal or state detention, as section 1226(c) directs, an arrested alien's right to an individualized bond hearing is governed by section 1226(a), not section 1226(c)(2). *See Waffi v. Loiselle,* 527 F. Supp. 2d 480, 488 (E.D. Va. 2007) (holding section 1226(c) did not

---

[2] Specifically, ICE has charged Harris with removability under Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii), on the grounds that he committed an aggravated felony after entry. Pet., ¶ 18.

apply to alien who was "taken into immigration custody well over a month after his release from state custody," and that alien was entitled to individualized bond hearing pursuant to Section 1226(a)); *Keo v. Lucero*, No. 1:11-cv-614, 2011 WL 2746182 (E.D. Va. July 13, 2011) (applying *Waffi* and progeny and ordering that petitioner be granted individualized bond hearing within 15 days); *Hosh v. Lucero*, No. 1:11-cv-464, 2011 WL 1871222 (E.D. Va. May 16, 2011) (holding, in accordance with *Waffi* and progeny, that mandatory detention is not required under section 1226(c)(2) for alien taken into custody long after release from state custody and ordering petitioner be granted individualized bond hearing within ten days); *Cummings v. Holder*, Case No. 1:10-cv-1114 (E.D. Va. Jan. 14, 2011) (applying *Waffi* and progeny and ordering that petitioner be granted individualized bond hearing within ten days); *Bracamontes v. Desanti*, Case No. 2:09-cv-480, 2010 WL 2942757 (E.D. Va. July 26, 2010) (overruling objections to report and recommendation, and ordering that petitioner be granted individualized bond hearing within ten days); *Bracamontes v. Desanti*, Case No. 2:09-cv-480, 2010 WL 2942760 (E.D. Va. June 16, 2010) (recommending that alien who was not detained until eight years after his release from state custody be granted individualized bond hearing). Other courts have reached similar conclusions.[3]

---

[3] *See, e.g., Khodr v. Adduci*, 697 F. Supp. 2d 774, 778-80 (E.D. Mich. 2010); *Scarlett v. United States Dep't. of Homeland Sec.*, 632 F. Supp. 2d 214, 219-20 (W.D.N.Y. 2009), accepted in relevant part by 632 F. Supp. 2d 214 (W.D.N.Y. 2009); *Quezada-Bucio v. Ridge*, 317 F. Supp. 2d 1221, 1231 (W.D. Wash. 2004), accepted by 317 F. Supp. 2d 1221, 1224 (W.D. Wash. 2004); *Dang v. Lowe*, Case No. 1:CV-10-0446, 2010 WL 2044632, at * 11-14 (M.D. Pa. May 7, 2010), accepted in relevant part by 2010 WL2044634 (M.D. Pa. May 20, 2010); *Sandoval-Vela v. Napolitano*, Case No. 10-CV-0059, 2010 WL 431449, at * 6-7 (S.D. Cal. Jan. 29, 2010). *But see Saucedo-Tellez v. Perryman*, 55 F. Supp. 2d 882, 884-85 (N.D. Ill. 1999) (concluding that section 1226(c) is ambiguous, and giving *Chevron* deference to agency interpretation of section 1226(c));

Relying on *Matter of Rojas*, 23 I. & N. Dec. 117 (BIA 2001), immigration officials in this District have continued to interpret and apply section 1226 to deny a bail hearing to an alien arrested by immigration authorities under the circumstances of this case, contrary to the Court's construction of section 1226 in its prior cases. The United States has appealed to the Court of Appeals for the Fourth Circuit in at least two of these cases, and these appeals are pending. *See Pasicov v. Holder*, Case No. 1:11-cv-487 (E.D. Va. May 20, 2011), *appeal docketed*, No. 11-6968 (4th Cir. July 29, 2011); *Hosh v. Lucero*, Case No. 1:11-cv-464 (E.D. Va. May 16, 2011), *appeal docketed*, No. 11-1763 (4th Cir. July 22, 2011). In addition, the United States has requested the Court in this case to reconsider its interpretation and application of section 1226, particularly in light of the government's arguments that purportedly were not presented or considered in previous cases decided by this Court on this issue.

Section 1226, entitled "Apprehension and Detention of Aliens," addresses whether an alien arrested and detained pending a decision on removal from the United States may be released pending that decision. Section 1226(a) provides all detained aliens with the opportunity to obtain an individualized bail hearing to determine detention or release pending a decision on removal. Section 1226(c), entitled "Detention of Criminal Aliens," addresses whether and under what circumstances arrested aliens who have been convicted of certain crimes or engaged in certain conduct ("criminal aliens")[4] may be released pending a decision on removal. Under paragraph (c)(1), criminal aliens

---

*Sulayao v. Shanahan*, Case No. 09-Civ-7347, 2009 WL3003188, at * 8-19 (S.D.N.Y. Sept. 15, 2009) (same).

[4] The reference to "criminal aliens" in the title of section 1226(c) presumably refers to those aliens who are inadmissible to or deportable from the United States by virtue of having committed an offense enumerated in 8 U.S.C. §§ 1182 or 1227.

taken into custody under certain circumstances must be detained. Under paragraph (c)(2), criminal aliens subject to mandatory detention under (c)(1) may be released under certain circumstances.

In its previous decisions, the Court has concluded that section 1226(c) eliminates an arrested alien's opportunity for release provided under section 1226(a) only in the event that a criminal alien's immigration custody follows without interruption from a previous state or federal custodial detention, that is, where a criminal alien is released from state or federal custody directly into immigration custody, typically because of an outstanding detainer issued by immigration authorities. In that circumstance, the criminal alien's freedom from detention and custody has never been re-established before immigration detention and custody begins, and the Court has concluded in other cases that in such a circumstance, and only such a circumstance, Congress decided it would eliminate the opportunity that a criminal alien would otherwise have under section 1226(a) to obtain his release on bail pending a decision on removal.

Section 1226(a) directs the Attorney General to take custody of a criminal alien at a specific point in time, *viz.*, "when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." That language, as well as the structure of section 1226, makes clear that Congress intended to eliminate the right of a criminal alien to an individualized bail hearing only in those instances when immigration custody interacts seamlessly with other federal or state detention. It does not establish, as the United States contends, a statutory disqualification for release pending a removal decision, based solely on a person's status as a criminal

alien.[5] More specifically, the language in section 1226(c) does not encompass an alien who at some point committed an offense enumerated in 8 U.S.C. §§ 1182(a) or 1227(a), but who has since been released back into the community. To read the "when the alien is released" language, as the United States does, to authorize detention without any possibility of release on bail (unless authorized under section 1226(c)(2)) simply "in the event that" a criminal alien is released from custody, without regard to whether such an alien had re-established his freedom at the time of his arrest, extends section 1226(c)(1) beyond the plain meaning of its language as well as the clear context of its intended application.

The United States justifies its position in large part based on its understanding that the legislative purpose of section 1226(c) is to eliminate the opportunity for release pending a removal decision of that class of aliens who are presumed to be flight risks or dangers to the community. Federal Respondents' Response to Habeas Petition (Doc. No. 7) at 1 ("Fifteen years ago, Congress – faced with alarming evidence over the futility of removal proceedings because certain aliens would abscond (and often commit further crimes) before the completion of those proceedings – decided to strip the Executive Branch of its discretion to release certain categories of aliens on bond during the pendency of removal proceedings."); *id.* at 7 ("Congress . . . set out to fix this problem, . . . by *eliminating* the discretion previously enjoyed by Executive Branch officials to release a certain subset of aliens – those Congress deemed most dangerous and inimical

---

[5] The United States interprets the "when released" language to require only that the Attorney General take custody of a criminal alien "in the event that" the alien is released from custody; and that the "when released" language "does not limit the impact of § 1226(c)(2)'s withholding of bond to such aliens." Federal Respondents' Response to Habeas Petition (Doc. No. 7) at 16-17.

7

to national security – on bond during the pendency of removal proceedings . . . . On this score, Congress reasoned that 'even with individualized screening, releasing deportable criminal aliens on bond would lead to an unacceptable rate of flight.'") (emphasis in original) (citations omitted). But the "when released" language appears unrelated to this claimed legislative purpose since an alien's conviction or conduct enumerated in section 1226(c)(1) would be sufficient, in and of itself, to accomplish that purpose. Moreover, if Congress's purpose were to eliminate the opportunity for release of a certain category of aliens, regardless of when they were taken into custody, as the government contends, it is not reasonable to assume that it would have used the language or structure of section 1226 to accomplish that objective.

For the above reasons, and upon consideration of the arguments advanced by the United States, the Court reaffirms its previous decisions in *Pasicov*, *Hosh*, and *Cummings*. The Court therefore concludes that Petitioner should be provided an individualized bond hearing pursuant to 8 U.S.C. § 1226(a). Accordingly, the Petition will be granted in part, and this matter will be remanded to the United States Immigration Court in Arlington, Virginia, for the purpose of providing Petitioner with an individualized bond hearing within ten days of the date of this Order.

The Court will retain jurisdiction over Petitioner's fee request pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, pending further briefing and argument. *See Bracamontes*, 2010 U.S. Dist. LEXIS 75977, at * 4.

## CONCLUSION

For the above reasons, the Petition will be granted in part, and the Court will retain jurisdiction over Petitioner's fee request.

8

An appropriate Order shall issue.

/s/
_____
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
February 23, 2012